**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CRIMINAL CASE NO. 3:03cr127**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| | ) | |
| **RICHARD OLTON, KENNEDY ELLIOTT BARKLEY, and JEREMIAH CHAMBERS.** | ) ) ) ) | |

**THIS MATTER** is before the Court on the following motions:

1. The motion to compel of Defendant Barkley, filed January 8, 2007;

2. The motion for a status report of Defendant Barkley, filed June 15, 2007;

3. The motion for a new trial of Defendant Olton, filed October 31, 2007;

4. The motion to expedite ruling of Defendant Olton, filed January 15, 2008; and

5. The motion for the return of property of Defendant Olton, filed January 23, 2008.

1

## PROCEDURAL HISTORY

The Defendants were charged on July 28, 2003 with conspiracy to possess with intent to distribute cocaine, cocaine base and heroin, in violation of 21 U.S.C. §846.  Bill of Indictment, filed July 28, 2003.  Defendants Barkley and Chambers were charged with one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §841.  Id.  Defendant Olton was charged with one count of possession of cocaine and heroin with intent to distribute.  Id.  Defendants Barkley and Olton were both charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1).  The case was assigned to the Hon. Brent McKnight.  Defendants Chambers and Barkley entered into plea agreements with the Government in December 2003.  In June 2004, Judge McKnight sentenced Defendant Chambers.  Thereafter, the Judge became terminally ill.

On July 26, 2004, a superseding bill of indictment was filed against Defendant Olton which added a charge of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. §924(c).  Olton was tried in November 2004 before Judge William L. Osteen due to the illness of Judge McKnight.

On December 14, 2004, Defendant Barkley was sentenced by Judge Lacy H. Thornburg, upon reassignment due to Judge McKnight's death.

Defendant Olton was sentenced by Judge Osteen on June 7, 2005. He appealed his convictions which were affirmed by the United States Fourth Circuit Court of Appeals in July 2007.  United States v. Olton, 2007 WL 2005141 (4th Cir. 2007), *cert. denied* 128 S.Ct. 635 (2007).

In the meantime, Defendant Barkley filed a motion in his criminal case for the court to compel the Government to make a Rule 35 motion for a sentence reduction based on his post-conviction substantial assistance. Motion to Compel, filed January 8, 2007.  Although Judge Thornburg sentenced the Defendant, the motion was referred to the Magistrate Judge. In June 2007, Defendant Barkley moved for a status report on his pending motion and that motion also was sent to the Magistrate Judge.  *Pro se* Motion to Compel, filed June 15, 2007.

In October 2007, Defendant Olton moved for a new trial.  Motion for New Trial, filed October 31, 2007.  Although not clear, it appears that this motion may have been sent to Judge Osteen, the sentencing judge.  On January 15, 2008, Defendant Olton moved to expedite a ruling on the above motion.  Motion to Expedite, filed January 15, 2008.  This motion

3

was sent to the Magistrate Judge.

On January 22, 2008, the case, including each of the three defendants, was reassigned to the undersigned for disposition of the five motions addressed herein. It is unclear why the case of Defendant Barkley was reassigned from Judge Thornburg to the undersigned. However, after consultation with the chambers of Judge Thornburg, he agrees to the reassignment and concurs with the undersigned that the case is best handled by one district court judge.

Any referrals to the Magistrate Judge are withdrawn. It would be an inefficient use of judicial resources for the Magistrate Judge to prepare a memorandum and recommendation as to these motions. The motions are considered in order of age.

## DISCUSSION

**Defendant Barkley's motions.**

Defendant Barkley has moved for an order to require the Government to file a Rule 35(b) motion to reduce his sentence based on his assistance provided to the Government after sentencing but before he self-surrendered to serve his term of imprisonment. Barkley recites several

incidents in January, March and April of 2005 which he claims resulted in controlled purchases of drugs due to his efforts. Thus, he claims the Government breached its oral agreement with him to move pursuant to Rule 35(b) for a further reduction in sentence.

> Upon the government's motion made within one year of sentencing, the court may reduce a sentence if:
> (A) the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and
> (B) reducing the sentence accords with the Sentencing Commission's guideline and policy statements.

Fed.R.Crim.P. 35(b)(1).

On December 23, 2003, the Defendant entered into a plea agreement with the Government. That agreement contained the following provision:

> When and if the defendant assists the government[:]
>
> a. The United States, *in its sole discretion*, will determine whether said assistance has been substantial.
>
> b. Upon a determination that the defendant has rendered substantial assistance, the government *may* make a motion pursuant to U.S.S.G. §5K1.1 for imposition of a sentence below the applicable Sentencing Guidelines. The United States may also, *within its sole discretion*, move the Court pursuant to 18 U.S.C. §3553(e) to impose a sentence below any applicable statutory mandatory minimum.
>
> The defendant recognizes that the Court cannot depart below the

> Sentencing Guidelines for substantial assistance [U.S.S.G. §5K1.1] absent a motion from the United States. The defendant further recognizes that, even if the United States makes a recommendation ..., the Court cannot depart below the statutory minimum unless the United States also includes a specific recommendation pursuant to 18 U.S.C. §3553(e).
>
> ...
>
> Any determination that the defendant has failed to provide substantial assistance ... *is within the sole discretion of the United States*, and the defendant *waives all objections and rights of appeal or collateral attack of such a determination*.

Plea Agreement, filed December 23, 2003, at ¶23 (emphasis provided).

On December 8, 2004, the Government moved pursuant to U.S.S.G. §5K1.1 for a downward departure from the guideline range of sentencing based on the Defendant's substantial assistance. The Government recommended a departure from a guideline range of 262-327 months to 140-175 months and asked for the lowest end of the guideline range. The Defendant was, in fact, sentenced to 140 months based on the Government's motion. The Defendant's argument now is that his post-conviction cooperation has been ignored by the Government.

It is first noted that the Defendant waived, in his plea agreement, any right to contest the degree of or recommendation for a downward departure based on substantial assistance. The Defendant does not contend that his waiver was anything other than knowing and intelligent; in

fact, the record shows that his plea agreement was entered into voluntarily. United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005); United States v. Harris, 234 Fed.Appx. 57 (4th Cir. 2007), *cert. denied* 128 S.Ct. 685 (2007) ("The record reveals and Harris does not contest, that he knowingly and voluntarily waived the right to appeal. Moreover, the sentencing issues Harris attempts to raise on appeal fall within the scope of the waiver."). Since the issue of whether the Government moves for an additional downward departure falls within the scope of the waiver, it has been waived and the undersigned may not address it. United States v. Wells, 2007 WL 2985301 **2 (4th Cir. 2007), *citing* Blick, *supra*.; *accord* United States v. Williams, 247 Fed.Appx. 423 (4th Cir. 2007), *pet. cert. filed* (2007).

Assuming *arguendo* that this issue had not been waived, the Defendant fares no better.

> Wade v. United States, 504 U.S. 181 [] (1992), holds that without regard to whether substantial assistance has in fact been provided by a defendant, in the absence of a government motion a sentencing court may not grant a downward departure on that basis unless (1) the government had obligated itself in a plea agreement to move for such a departure, or (2) unless, in the absence of such an obligation, it is shown that the government's refusal or failure so to move "was based on an unconstitutional motive." In the first instance, the departure may be granted upon proof that the plea agreement has been breached by the government. In the second, upon proof of the unconstitutional motive.

> ...
> Here, as indicated, there was no enforceable obligation arising from the plea agreement; the government's refusal was a purely discretionary one. That left only the possibility that the discretionary refusal was unconstitutionally motivated[.] As to that possibility, *Wade* imposes upon a defendant the burden to do more than merely allege unconstitutional motive in order to require judicial inquiry. A defendant must go further and make "a substantial threshold showing," failing which he is "not entitle[d] [] to a remedy or even to discovery or an evidentiary hearing."

United States v. Wallace, 22 F.3d 84, 87 (4th Cir. 1994), *cert. denied* 513 U.S. 901 (1994), *citations omitted*; *accord*, United States v. LeRose, 219 F.3d 335 (4th Cir. 2000). Here, the Defendant did not make a substantial threshold showing of an unconstitutional motive and the motion therefore must be denied in any event. The Defendant's request for an evidentiary hearing is also denied. His motion for a status report is denied as moot.

**Defendant Olton's motions.**

Next, the Court considers Defendant Olton's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, filed October 31, 2007. Olton argues that during his trial in 2004, the Government failed to provide in discovery the complete criminal history of his co-defendant Barkley. He also claims that the Government failed to provide a copy of the plea agreement Barkley had previously entered into with federal authorities in

the United States District Court for the Western District of North Carolina. Finally, he claims Barkley had been arrested on state charges in 1996 and the Government did not provide this information during the trial. This is new evidence, he claims, which could have been used to impeach Barkley's trial testimony.

> A motion for a new trial based on newly discovered evidence should be granted only if (1) the evidence relied on is, "in fact, newly discovered;" (2) there are facts "alleged from which the court may infer due diligence on the part of the movant;" (3) "the evidence relied upon [is] not merely cumulative or impeaching;" (4) "the evidence [is] material to the issues involved;" and (5) the evidence is of such a nature that it would "probably result in [an] acquittal at a new trial."

United States v. Lofton, 233 F.3d 313, 318 (4th Cir. 2000), *quoting* United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). In order to obtain a new trial on this basis, a defendant must satisfy all five elements. United States v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001), *cert. denied* 534 U.S. 939 (2001).

It is first noted that the Defendant's statements in the motion do not show that the Government failed to provide the discovery to defense counsel. Instead, the allegations show that counsel did receive the discovery and that after the Defendant's conviction, defense counsel provided copies of that discovery to the Defendant. It is that discovery,

attached to the motion, upon which the motion is based. Defendant argues that

> the Government failed to turn over all plea agreements entered with the Government's key witness, Kennedy Barkley[.] After trial and during Defendant's direct appeal, the Defendant wrote a general correspondence to his Trial Counsel seeking all discovery material provided to him by the Government. ... Thereafter, Trial Counsel provided the Defendant with copies of discovery material that consisted of co-defendant's criminal history[.] Upon receiving the discovery material, the Defendant took notice that Mr. Barkley had more than one plea agreement with the United States Attorney's Office[.] ... The Government never provided copies of the latter state records, nor were the plea agreements of these cases ever provided to the Defendant.

Motion for New Trial, *supra*., at 2-3.

The record in the case shows that these claims are incorrect. On the first morning of the trial, the Defendant's attorney argued pre-trial motions to Judge Osteen. Included in those motions was the request for copies of plea agreements which the Government had with any witness who would be testifying at trial. Vol. I, Trial Transcript, filed October 27, 2006, at 5. The Government's attorney advised that he had provided copies of such agreements to defense counsel as to the only witness who would be testifying, Kennedy Barkley. *Id*. Defense counsel did not dispute this and the record shows that the plea agreement had been provided. The Defendant's attorney also requested the identities of government

informants. *Id.*, at 6.  He acknowledged that he knew one such informant was Barkley.  *Id*.  The trial court refused his request for those identities at that point in the trial.

Attached to the motion are copies of print-outs from the National Crime Information Center (NCIC), dated March 5, 2003.  Document 133-2, attached to Motion, *supra*.  Those print-outs clearly show the previous federal court conviction of which the Defendant now complains.  *Id.*, at 1-3.  It was this conviction as to which the copy of the plea agreement was provided.  The same records show that upon his release from federal prison, his supervised release was violated in 1994.  *Id.*, at 4-5.  Thus, the records attached to the motion show that the Government provided this discovery to defense counsel.

Also attached to the motion are copies of print-outs from the National Law Enforcement Teletype System (NLTS), dated March 5, 2003.  Document 133-2, *supra*.  Those print-outs show the following additional arrests and/or convictions for the Defendant: (1) felony breaking and entering, convicted 11-30-77; (2) shoplifting, dismissed 4-13-79; (3) larceny, dismissed 6-16-80; (4) trafficking in cocaine, convicted 4-18-83; (5) sell and deliver cocaine, convicted 10-17-84; (6) trafficking in cocaine,

11

dismissed 4-16-87; (7) trafficking in cocaine, dismissed 2-2-98; (8) shoplifting, dismissed 2-2-98; and (9) drug trafficking, dismissed 6-23-98. *Id*., at 1-14.

The documents attached to the motion are identified by the Defendant as the discovery which his attorney received from the Government during his trial. These documents show that every criminal conviction of Barkley was disclosed to defense counsel.

In addition, during Barkley's testimony at trial, he admitted on direct examination that he had been convicted of the following crimes: (1) a state drug conviction in 1984; (2) a federal drug conspiracy charge in 1986; and (3) a drug trafficking charge in 1997 or 1998. Vol. II, Trial Transcript, filed October 27, 2006, at 73-74.

The record shows that contrary to the claims made in this motion, the Government provided the discovery at issue to defense counsel. Therefore, it does not qualify as "newly discovered evidence."[1] Moreover,

---

[1] To the extent that the Defendant may claim that his attorney's failure to recognize and/or argue that documents were not provided constitutes ineffective assistance of counsel, "information supporting an ineffective assistance claim is not 'evidence' within the meaning of Rule 33[.]" United States v. Smith, 62 F.3d 641, 648 (4th Cir. 1995); United States v. Russell, 221 F.3d 615 (4th Cir. 2000).

even if this evidence did so qualify, the Defendant cannot establish the other four elements required for a new trial. United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995) ("Without ruling out the possibility that a rare example might exist, we have never allowed a new trial unless the defendant can establish all five elements.").

Barkley testified during his direct examination about three previous criminal convictions. During re-direct examination, the Government admitted into evidence a copy of his plea agreement. Vol. II, Trial Transcript, *Id*., at 143-45. The additional criminal history was therefore merely cumulative impeachment and would not have altered the outcome of the trial. United States v. Johnson, 1 F.3d 1234 (table) **3 (4th Cir. 1993), *cert. denied* 511 U.S. 1130 (1994) ("[T]he new information about Monroe's criminal history was merely cumulative impeachment that would not have altered the outcome of the trial, and was therefore not material. We find that this determination was not error, given that Monroe had already been thoroughly impeached by being shown to be a criminal co-conspirator with a plea agreement and that the testimony of other witnesses was more than enough to support Wilkerson's conviction."), *citing* United States v. Curtis, 931 F.2d 1011, 1014 (4th Cir.)*, cert. denied*,

501 U.S. 881 (1991).

    Among the witnesses who testified against Olton at trial were the following: (1) Robert Wise, a police officer with the Charlotte-Mecklenburg Police Department who arranged the controlled purchases from Olton while under surveillance and participated in his arrest; (2) Ray Busker, another police officer who participated in the investigation and arrest; (3) Jeffrey Lang, another police officer so involved; (4) Special Agent Nathaniel Jones of the Federal Bureau of Investigation; (5) Jennifer Mills, a police officer employed as a forensic chemist; (6) Tony Aldridge, a police officer employed in the crime lab; (7) Arthur Robson, another police officer involved in the investigation and arrest; and (8) Rodney Blacknall, an agent with the Bureau of Alcohol, Tobacco and Firearms who was involved in the investigation and arrest. "[E]ven if the newly discovered impeachment evidence might have totally destroyed the credibility of [Barkley], 'there was still ample evidence before the jury which would support the verdict they returned.'" United States v. Adams, 161 F.3d 3 (table) **9 (4th Cir. 1998), *cert. denied* 525 U.S. 1163 (1999).

    The Defendant's motion for a new trial is therefore meritless. His motion to expedite a ruling on the motion for a new trial is moot.

**Defendant Olton's motion for the return of property.**

Defendant Olton alleges in his motion that during his arrest, approximately $13,000.00 in currency was seized from his person and his automobile. Claiming that the funds are the proceeds of the sale of audio and restaurant equipment from his former business, a night club and restaurant known as "The Vault," the Defendant moves for its return.

The Government has responded that the Charlotte-Mecklenburg Police Department contacted the North Carolina Department of Revenue after the Defendant's arrest because, in addition to the currency, a large quantity of cocaine and heroin were also found. The Government advises that the State Department of Revenue seized the currency as payment for a tax levy.

The transcript from the trial provides the only evidence regarding the point of contention as to what party seized the currency in question. Charlotte-Mecklenburg Police Officer Jeffrey Lang testified that he was the officer who inventoried the property seized during the arrest of the Defendant and the search of his apartment. Vol. II, Trial Transcript, *supra*., at 8-42. Officer Lang testified that the North Carolina Department of Revenue seized the total amount of currency collected as a result of the

Defendant's arrest after the traffic stop and the subsequent search of his apartment. Id., at 40-42. The total amount of currency confiscated by the North Carolina Department of Revenue was $59,863.00. Id., at 42.

Rule 41(g) provides in pertinent part that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized." However, "an order that the [Government] return [property] which it does not have, nor does it have control over, cannot stand." Lowrie v. United States, 824 F.2d 827, 829 (10th Cir. 1987). Likewise, "[t]he federal government can refuse to restore property lawfully forfeited to the state and it cannot be forced to return property that it does not have." United States v. Ross, 91 F.3d 157 (table) **1 (9th Cir. 1996), *citing* United States v. Fitzen, 80 F.3d 387, 388-89 (9th Cir. 1996), *and* Lowrie, *supra*. Thus, "[t]o the extent that [Defendant's] property is subject to a[] [North Carolina] state tax levy, the district court [must] den[y] the 41[g] motion." Fitzen, *supra*. "Regardless of whether the defendant owes federal taxes or state taxes, the existence of a tax levy demonstrates a right to possession adverse to that of the defendant." Id. As a result, the motion for the return of property must also be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the motions of Defendant Barkley to compel and for a status report are hereby **DENIED**.

**IT IS FURTHER ORDERED** that the motions of Defendant Olton for a new trial, to expedite ruling and for the return of property are hereby **DENIED**.

Martin Reidinger
United States District Judge

Signed: February 12, 2008